**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **THOMAS HOPKINS,** | § | |
| **Movant** | § | |
| | § | |
| **V.** | § | **A-07-CA–542-LY** |
| | § | **(A-06-CR-133-LY)** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Movant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Clerk's Doc. No. 36); Movant's Memorandum in Support of his § 2255 Motion (Clerk's Docket No. 37); the Government's Response (Clerk's Doc. No. 41); Movant's Reply (Clerk's Doc. No. 42); Movant's Post-Hearing Brief (Clerk's Doc. No. 56); and the Government's Post-Hearing Brief (Clerk's Docket No. 56). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.

## I.   GENERAL BACKGROUND

On July 14, 2006, Movant Thomas Hopkins ("Movant") was charged in a one-count Superceding Information with conspiracy to commit fraud in connection with access devices in violation of 18 U.S.C. § 1029(b)(2). Pursuant to a written Plea Agreement, Movant pled guilty to Count One of the Superceding Information on July 18, 2006. On October 10, 2006, the District

Court sentenced Movant to a term of 78 months imprisonment, a three-year term of supervised release, a $100 special assessment fee and a $305,273.93 order of restitution.

Movant did not file a direct appeal of his conviction and sentence. However, on July 5, 2007, Movant filed the instant § 2255 Motion arguing that he was denied the effective assistance of counsel based on his counsel's failure to file a notice of appeal.

## II.  STANDARD OF REVIEW

Under § 2255, there are generally four grounds upon which a defendant may move to vacate, set aside or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.  The nature of a collateral challenge under Section 2255 is extremely limited:  "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."  *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice."  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).  Finally, it should be noted that a defendant may waive his statutory right to appeal his sentence including filing a § 2255 motion, if the waiver is knowing and voluntary.  *Untied States v. McKinney*, 406 F.3d 744, 746 (2005).

2

### III. DISCUSSION

Movant argues that he was denied the effective assistance of counsel by his attorney's failure to comply with his request to file a direct appeal of his conviction and sentence. Movant has attached sworn affidavits to his motion which allege that he directed his attorney, Jon Evans ("Evans"), to file a direct appeal and that Evans informed Movant that he would do so. In response to the Motion, the Government has attached a sworn affidavit from Evans asserting that Movant never requested that he file a notice of appeal with regard to Movant's conviction and sentence. Because the Court was faced with competing affidavits and versions of the events in question in this case, in accordance with Fifth Circuit precedent,[1] the Court held an evidentiary hearing on November 8, 2007.

### A.    The law regarding an attorney's duty to file a notice of appeal

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court laid out the basic framework for evaluating ineffective assistance of counsel claims. In order to prevail on an ineffective assistance of counsel claim, a movant must show that his counsel's performance was deficient and that those deficiencies in counsel's performance prejudiced the defense. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 687. To

---

[1] "Unless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief under § 2255, a district court must hold a hearing to resolve factual and legal issues." *United States v. Wainwright*, 237 Fed. Appx. 913, 915, 2007 WL 1814134 at *1 (5th Cir. June 22, 2007). See also, *U.S. v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) ("With regard to resolution of factual issues in a Section 2255 case, this Court has held that contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record."); *United States v. Heckler*, 165 Fed. App'x 360, 361 2006 WL 278543 at * 1 (5th Cir. 2006) (holding that defendant was entitled to evidentiary hearing on his claim that he received ineffective assistance of trial counsel by reason of counsel's failure to file notice of appeal where record did not conclusively show that defendant was entitled to no relief).

demonstrate the prejudice prong, a movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The Supreme Court has clearly instructed that it is professionally unreasonable for a lawyer to disregard a defendant's *specific instructions* to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327 (1969)). Such action by an attorney would establish both deficient performance and prejudice, whether or not the potential appeal appears meritorious. *Flores-Ortega*, at 478-79. "This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.* at 477. At the opposite end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently. *Id.* A third scenario is presented when a defendant has not clearly conveyed his wishes regarding an appeal one way or another.

When a defendant has not specifically expressed his wishes regarding an appeal, the preliminary inquiry is "whether counsel in fact consulted with the defendant about an appeal." *Id*. at 478. In *Flores-Ortega*, the Supreme Court explained that "consult" means to advise the defendant "about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel consults with the defendant, then counsel acts in a "professionally unreasonable manner only by failing to follow the defendant's express instructions

with respect to an appeal." *Id.* If counsel has not consulted with the defendant, the court must determine whether counsel's failure to consult itself constitutes deficient performance. *Id.* The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In making this determination, courts must take into account all the information counsel knew or should have known. *Id.* Although not determinative, the Supreme Court has stated that a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. *Id.*

The defendant must also show prejudice from counsel's deficient performance by demonstrating "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. Thus, in *Flores-Ortega,* the Supreme Court ruled that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* The question of whether a given defendant has made the requisite showing of ineffective assistance of counsel based on a failure to appeal will turn on the facts of the particular case. *Id.* at 485.

## B.      The Evidentiary Hearing

Movant was represented at the hearing by Karyl Krug and the Government was represented by Assistant United States Attorney Sharon Pierce. In addition to hearing testimony from the

5

Movant and his former attorney, Jon Evans, the Court also heard testimony from Movant's father, Thomas Hopkins Sr., Movant's sister, Adrienne Hopkins, and Movant's cousin, LaJune Henderson.

Movant testified that during his private meeting with Evans immediately after his sentencing, he informed Evans that he "was interested in an appeal" and that Evans "just sighed" in response to his request. Hearing Tr. at 9, 11. Movant later testified that he had unequivocally asked Evans to appeal his sentence. Tr. at 26. Movant further testified that Evans informed him of his appeal rights and reviewed the October 10, 2006 appeal letter from Judge Lee Yeakel with him, which notified Movant of his appeal rights and the ten day deadline to file an appeal. Government's Exhibit No. 1; Tr. at 11, 25. While Movant acknowledged that Evans discussed his appeal rights with him, Movant contends that Evans failed to discuss the "advantages and disadvantages" of appealing Movant's sentence. Tr. at 10. However, Movant later admitted that Evans did discuss the risks of appealing his sentence by informing Movant that his sentence could be increased if he appealed his sentence. Tr. at 10-11. Movant testified that although he did not communicate with his attorney at any time during the ten days after his sentencing, he testified that he thought his family would contact Evans regarding filing an appeal. Tr. at 14. Movant further stated that he had informed his father, sister and cousin that he wanted to appeal his case, but that none of them were able to discuss the appeal issue with Evans because they were unable to reach him. Tr. at 35, 43, 46.

Movant testified that he found out a "couple of months" after his sentencing that the notice of appeal had not been filed in his case. Tr. at 60. Despite Movant's testimony that he was "surprised" by this news, Movant acknowledged that he failed to even mention the alleged failure to appeal in any written communications to his attorney. Tr. at 14, 61. For example, in a letter to Evans on March 7, 2007, while Movant complains about Evans' performance in the case and

6

inquires into his state charges, Movant fails to mention Evans' alleged failure to file a notice of appeal.  Government's Exhibit No. 3.

Movant's father, Thomas Hopkins, Sr. ("Mr. Hopkins"), testified after the Movant at the hearing.  Although Mr. Hopkins could not recall the details of the conversation he had with Evans, he testified that he talked to Evans in the hallway immediately after Movant's sentencing hearing. Mr. Hopkins testified as follows: "Basically what I remember is trying to communicate to him that Thomas was going to want to appeal, that he was definitely wanting to appeal, and just the conversation along those lines." Tr. at 67.  In response, Mr. Hopkins stated that Evans gave him the impression that he would meet with Movant and do whatever was necessary to appeal his case.  *Id.* Mr. Hopkins testified that Evans informed him that he would "take care of everything" which Mr. Hopkins interpreted to mean that Evans would appeal the case and resolve Movant's concerns regarding his medical problems.  Tr. at 72.  However, Mr. Hopkins also admitted that he never actually heard Evans state that he would in fact file an appeal in Movant's case.  Tr. at 80.  Mr. Hopkins also testified that he knew that Movant had "ten or twelve days" from the date of sentencing to file an appeal in the case.  Tr. at 91.  Mr. Hopkins also stated that on November 22, 2006 (approximately five weeks after the sentencing hearing and thus after the appeal deadline had expired), he e-mailed Evans stating "Thomas needs to talk to you, very important information about case." Government's Exhibit No. 4.  Although Mr. Hopkins informed Evans that he wanted to discuss his son's case in the e-mail, he never mentions Movant's alleged desire to appeal his case or to inquire into why a notice of appeal was not filed.  Tr. 86.

Movant's sister, Adrienne Hopkins ("Ms. Hopkins") testified after the Movant at the hearing. Ms. Hopkins testified that she heard her father tell Evans that Movant wanted to appeal his sentence.

7

Tr. at 100.  She also testified that Movant's mother did not want Movant to file an appeal out of fear of Movant receiving a harsher sentence.  Tr. at 104.  Lastly, she testified that Movant told her that he had asked Evans to file an appeal.  Tr. at106.

Movant's cousin, Ms. LaJune Henderson, testified next at the hearing.  Ms. Henderson testified that immediately after Movant's sentencing hearing, she heard Evans tell Movant's family that he would be filing an appeal in Movant's case. Tr. at 109.

Movant's Attorney, Jon Evans, also testified at the hearing.  Evans testified that his written contract with Movant only required him to represent Movant through the sentencing phase of the case and did not require him to represent Movant on appeal.  Tr. at 119.  Evans further testified that immediately after Movant's sentencing hearing, he met with Movant in the attorney conference room and discussed the contents of Judge Yeakel's letter notifying Movant of his appeal rights and the ten day deadline to file an appeal.  Tr. at 122-23; Government's Exhibit No. 1.  Evans further stated that he discussed with Movant the fact that by pleading guilty, Movant was waving his right to appeal his sentence.  Tr. at 123.  Evans further testified that he discussed with Movant the advantages and disadvantages of appealing Movant's sentence including the possibility that Movant would receive a more severe sentence.  Tr. at 123, 126.  Evans testified that Movant did not ask him to file a notice of appeal in his case and did not suggest in any way that he wanted to appeal his sentence.  Tr. at 124, 126.  Evans stated that his conversation with Movant clearly led him to believe that Movant did not want to appeal his sentence.  Tr. at 126.

Evans further testified that after his meeting with Movant, he met with Movant's parents in the hallway outside of the Courtroom on the day of Movant's sentencing.  Tr. at 128.  Evans stated that he discussed with Movant's parents the particular sentence Movant received and the type of

facility that Movant would be sent to.  However, Evans denied that he ever discussed appealing Movant's sentence or that he told them that he would appeal Movant's sentence.  Tr. at 129.  Evans further testified that neither Movant nor anyone on his behalf ever contacted Evans within the ten days after Movant's sentencing to direct him to file a notice of appeal.  Tr. at 130.

Evans testified that the first communication he received regarding Movant's case after the appeal deadline had expired was a telephone call from Movant's father, on October 31, 2006, inquiring into how to go about picking up Movant's personal belongings from the Seguin correctional facility.  Tr. at 131.  Evans testified that the next inquiry he received about Movant's case was from Probation Officer Caroline Clark who telephoned Evans on November 20, 2006, to inform him that Movant's family had attempted to contact him but were unable to reach him.  Tr. at 134.  She relayed that Movant's family had stated that they had "some things" to discuss with Evans and that Movant would like to cooperate with the Government. Tr. at 134.  Evans testified that he interpreted the message to mean that Movant wanted to discuss the possibility of providing the Government with certain information in the hopes of receiving a downward departure pursuant to U.S.S.G. § 5K1.1, as referenced in the Plea Agreement. Tr. at 135; Plea Agreement at 3.

After receiving this message from Caroline Clark, Evans testified that he e-mailed Mr. Hopkins, Sr., on November 21, 2006, asking how he could help him.  Tr. at 136.  In response, Mr. Hopkins, Sr., stated "Thomas needs to talk to you, very important information about case."  Tr. at 136; Government's Exhibit No. 4.  Evans replied to Mr. Hopkins, Sr.'s e-mail on November 26, 2006, informing him that Movant would not be allowed home before he was transferred to another facility and noting that "He[Movant] can always send me a letter and let me know what it is he needs to address." Government's Exhibit No. 5; Tr. at 137.  Evans testified that he believed the "important

9

information" comment was referring to Movant's desire to cooperate with the Government and not

his desire to file a notice of appeal.  Tr. at 138.

Evans testified that the next communication he had with Movant or his family regarding

Movant's case occurred on February 26, 2007, when he met with Movant's mother at his office. Tr.

at 138.  Evans testified that Mrs. Hopkins told him that Movant "needed to talk to me about matters,

seemingly about cooperation with the government again." Tr. at 139.  Evans further stated that Ms.

Hopkins did not ask him to file an appeal, despite the fact that she had been paying her son's legal

bills.  Tr. at 139-40.  Evans further testified that after this meeting, he sent Movant a letter informing

Movant that he would only discuss the case with Movant and informed Movant of the following:

> Send me a letter with **all** of the information and questions that you have and I will get
> back with you as soon as possible.  If you want to try and do anything with your case,
> you had better come forward with the information now, because time is of the
> essence.  There is no more time left for any more of your cat and mouse games.  Only
> you can help yourself at this point. . . .Please call me if you have any questions or
> concerns."

Tr. at 142; February 26, 2007 letter, Government's Exhibit No. 2.  Evans explained that the

"information" he was referring to in the letter was any information Movant wanted to come forward

with to provide the Government in order to receive a downward departure. Tr. at 142-43.  While

Movant did send Evans a letter in response to the above-letter on March 7, 2007, Evans notes that

Movant's response fails to mention anything about appealing his sentence. Tr. at 144; Government's

Exhibit at No. 3.  In summary, Evans testified that he did not receive any request from Movant or

any of his family members directing Evans to file a notice of appeal in Movant's case. Tr. at 145.

Evans further testified that he would have filed a direct appeal if Movant had requested him to do

so.  Tr. at 154.

10

C.    **The Court's Findings**

It is the responsibility of the trial court to weigh the conflicting testimony and resolve any conflicts in the testimony and evidence.  *Hall v. United States*, 489 F.2d 427, 428 (5th Cir. 1974). After hearing the above-testimony, the Court finds that Movant's claim that he asked Evans to file a notice of appeal is not credible. *See United States v. Giacomel,*153 F.3d 257, 258 (5th Cir. 1998) (stating that the Magistrate Judge may make credibility findings based on evidence presented at an evidentiary hearing in a § 2255 case); *United States v. Montemayor*, 998 F.2d 1014, 1993 WL 277213 at * 2 (5th Cir. July 23, 1993) ("the trier of fact is uniquely qualified to evaluate the demeanor and credibility of witnesses.").

First, the Court finds that Movant's testimony conflicts with some of his previous statements in the record.  Although Movant alleged in his § 2255 Petition that he *specifically* requested that his counsel file and perfect an appeal on his behalf[2] and that he failed to do so, Movant's testimony at the evidentiary hearing was not so unequivocal.  For example, Movant testified that during his private meeting with Evans immediately after his sentencing, Movant informed Evans that he "was interested in an appeal" and that Evans "just sighed" in response to the request.  Hearing Tr. at 9, 11. However, Movant later testified that he had unequivocally asked Evans to appeal his sentence.  Tr. at 26.  Although Movant acknowledged that Evans discussed Movant's appeal rights with him and discussed Judge Yeakel's appeal letter with him, he contends that Evans failed to discuss the "advantages and disadvantages" of appealing Movant's sentence. Tr. at 10.  However, Movant later admitted that Evans did in fact discuss the risks of appealing his sentence by informing Movant that his sentence could be increased if he appealed his sentence.  Tr. at 10-11.

---

[2]Movant's Memorandum at p.6 (Clerk's Docket No. 37).

Movant's testimony that he asked his attorney to file an appeal is also not corroborated by any written communications to Evans.  For example, in Mr. Hopkins, Sr.'s letter to Evans on November 22, 2006, he only states that "Thomas needs to talk to you, very important information about case" and fails to mention Movant's desire to appeal his case or Movant's surprise that no appeal was ever filed.  Government's Exhibit No. 4.  The Court finds Evans' testimony that he interpreted Mr. Hopkins' letter to refer to Movant's desire to cooperate with the Government credible in light of Movant's Plea Agreement and Movant's March 7, 2007 letter.

As noted above, on February 26, 2007, Evans sent Movant a letter asking Movant to "[s]end me a letter with **all** of the information and questions that you have and I will get back with you as soon as possible."  Government's Exhibit No. 2.  In his response to Evans' letter, Movant fails to mention his alleged desire to appeal his case or Evans' failure to file a notice of appeal.  In the letter, Movant stated:

> . . .I just want you to know between me and you that I don't feel you represented me to the best of your ability.  I know I committed a crime and that your are not a magician, but I was disappointed because I felt we had a pretty good attorney client relationship prior to this case.  I don't feel I ever played any cat or mouse games with you. I really don't understand what you mean by if I want to do anything with my case. What options do I have?  I could share some info or give assistance but it's not related to my particular charges or case if it could really help me.  Now about these state charges....

Government's Exhibit 3.  If Movant had actually directed Evans to file a notice of appeal in his case, the Court finds that Movant would have referenced Evans' alleged failure to do so in the above-letter.  The fact that Movant failed to mention the appeal issue in the letter supports Evans' testimony that Movant never directed him to file an appeal in his case.

12

Movant's claim that he intended to file a direct appeal of his sentence is also not credible in light of the fact that he was fully informed of his appeal rights and thus could have filed a direct appeal if he was so inclined. As demonstrated by the testimony presented at the hearing, Movant and his father were fully informed of Movant's appeal rights and the ten-day time limit to file his appeal. Tr. at 11, 25, 88. Movant acknowledged that he received Judge Yeakel's October 10, 2006 letter informing him of his right to appeal his case and the ten-day time limit to file such an appeal. See Government's Exhibit 1. Thus, if Movant truly desired to appeal his sentence, he was clearly informed of the time limits to file such an appeal. The fact that Movant did not file a notice of appeal supports the conclusion that Movant never intended to appeal his case.

The Court further finds that Movant's decision to enter into the Plea Agreement which waived his right to appeal except with regard to prosecutorial misconduct and ineffective assistance of counsel also supports the finding that Movant did not desire to appeal his case and did not direct Evans to appeal the case. Plea Agreement at 4. Movant's Plea Agreement provides that "If the Defendant fully complies with the terms of this plea agreement and after the execution of this plea agreement, provides substantial assistance to the United States in this and other criminal investigations, the United States Attorney for the Western District of Texas may file a motion for downward departure pursuant to U.S.C.G. § 5K1.1." Evans testified and the evidence shows that Movant was hopeful that the Government would in fact file a motion for a downward departure. If Movant had appealed his case despite having waived his rights to do so, the Government could have interpreted Movant's action as a violation of the Plea Agreement which would have eliminated any chance that he would have received a downward departure or worse that the entire plea bargain could have been thrown out. Given the fact that Movant waived his right to appeal, the Court finds that

13

a rational defendant would not have desired to file a direct appeal knowing that by doing so he could be opening himself up to a more severe sentence.

Based on the foregoing, the Court finds that Movant did not direct Evans to file an appeal on his behalf.  Accordingly, Movant has failed to demonstrate that Evans acted in a professionally unreasonable manner which would establish both deficiency and prejudice. *Flores-Ortega*, 528 U.S. at 477.

The Court also finds that Evans properly consulted with Movant about an appeal by "advising the defendant about the advantages and disadvantages of taking an appeal," and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.  To the extent Movant could be claiming ineffective assistance based on Evans' failure to consult with him after sentencing regarding a potential appeal, Evans' failure to do so can only be considered constitutionally defective assistance if a constitutionally-imposed duty to so consult existed. *Flores-Ortega*, 528 U.S. at 478-79.  As already discussed, the Supreme Court has instructed that such a duty arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (internal citation omitted).

As already discussed, Movant's Plea Agreement waived his right to appeal his sentence unless his constitutional rights were violated by virtue of ineffective assistance of counsel or prosecutorial misconduct.  Plea Agreement at 4. *See Flores-Ortega*, 528 U.S. at 480 ("Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and

14

because such a plea may indicate that the defendant seeks an end to judicial proceedings."). Both the Magistrate and District Judges went over this provision with Movant at his rearraignment and sentencing proceedings, and the Movant stated that he understood that he was waiving those rights. In addition, Movant admitted that Evans also discussed the waiver provision with him and that Evans consulted with Movant about the advantages and disadvantages of appealing the case, including the possibility of receiving a more severe sentence. Taking into account all of the information available to Movant and Evans, including Movant's waiver of his right to appeal, the potential that an appeal might only serve to lessen the chances the Government would file a § 5K1.1 motion, or that the Government could decide to throw the entire agreement out and impose a harsher sentence, the Court finds that no rational defendant would have desired an appeal in these circumstances. *See Beltran v. United States*, 2008 WL 3287134 at *3 n. 2 (S.D. Tex. Aug. 6, 2008). In addition, as discussed in detail above, the Court finds that Movant did not demonstrate to Evans that he was interested in appealing his case. Pursuant to the standards outlined in *Flores-Ortega*, the Court concludes that Evans' representation did not fall below an objective standard of reasonableness in this case.

Based upon the foregoing, the Court finds that Movant has failed to demonstrate that he was denied the effective assistance of counsel. Accordingly, the Court will recommend that Movant's § 2255 motion be denied.

## IV.  RECOMMENDATION

Based on the above, the Court **RECOMMENDS** that the District Court **DENY** Thomas Hopkins' Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Clerk's Doc. No. 36).

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this the 10th day of October, 2008.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE